Filed 12/22/22  P. v. Hefner CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060572 |
| v. | (Super. Ct. No. C-50770) |
| BRIAN LYLE HEFNER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge.  Reversed and remanded with directions.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Lynne G. McGinnis, and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Brian Lyle Hefner appeals from an order denying his petition for resentencing under Penal Code former section 1170.95 (now Pen. Code, § 1172.6).[1] A jury convicted defendant of one count of first degree murder, one count of attempted murder, and one count of robbery. The jury also found true the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)) and that defendant was vicariously armed in each crime (§ 12022, subd. (a)).

The trial court summarily denied defendant's petition for resentencing. The court concluded defendant was ineligible for relief as a matter of law given the jury's true finding on the special circumstance that the murder was committed during the commission of a robbery. (§ 190.2, subd. (a)(17).)

On appeal, defendant argues the court erred because the jury's true finding on the special circumstance allegations does not preclude him from obtaining resentencing relief as a matter of law. We agree. While the special circumstance allegations required the jurors to find defendant acted with the intent to kill, the jurors did not have to find defendant directly aided and abetted the murder. We therefore reverse the court's summary denial of defendant's petition. On remand, the court is directed to issue an order to show cause and to conduct an evidentiary hearing as to the murder charge. We also direct the court to consider whether defendant can establish a prima facie basis for relief as to his attempted murder conviction.

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). All further statutory references are to the Penal Code.

# FACTS[2]

*Relevant Background*

"Mike Wolbect and Tim Dykstra were door-to-door salesmen for Global Wholesalers in Garden Grove. Monday, November 8, 1982, was pay day and Wolbert received a little over $60 at approximately 5:00 p.m. that day from Global. Wolbert and Dykstra talked with defendant and defendant's roommate, John Visciotti in the Global parking lot. Defendant and Visciotti also worked for Global, but had recently quit and were there to collect their last pay checks. Defendant and Visciotti said they had met some girls, and invited Wolbert and Dykstra to accompany them that evening to the girls' house.

"After dropping off defendant's car at an apartment complex, the four set off in Wolbert's '69 Camaro. Wolbert was driving, Dykstra was in the front seat and defendant and Visciotti were in the back seat. Wolbert and Dykstra had hidden their cash under the dashboard as a precaution. Wolbert followed Visciotti's directions, and eventually they ended up on Chapman heading into the hills.

"When they reached a rural area on a two-lane road with no houses or street lights, Visciotti asked Wolbert to stop the car so he could go to the bathroom. As everyone but Wolbert got out of the car, Visciotti produced a gun and pointed it at Dykstra. Wolbert was ordered out of the car. Defendant said '"Where is the money?"' Wolbert said it was in his wallet. Defendant entered the car through the driver's door to look for the money. When he demanded the money again, Wolbert told him it was under the dashboard. Wolbert saw defendant leave the car with the money.

"At this point Visciotti and defendant 'spoke momentarily,' but Wolbert was unable to hear what they said. Visciotti walked toward Wolbert, and Wolbert asked him 'not to hurt us.' He told Visciotti he could take the car 'and as far as I was

---

[2] We provide a summary of the relevant facts from this court's prior opinion. (*People v. Hefner* (May 12, 1988, G004568) [nonpub. opn.] (*Hefner II*).)

concerned I had never even seen them before." Visciotti turned and walked to the front of the car. In so doing he passed defendant seated in the front passenger seat and defendant and Visciotti 'spoke again briefly.' Wolbert could not hear what was said. Visciotti stood in front of Dykstra, who was seated against a hill in front of the car, and shot him. Dykstra fell back and did not move.

"Visciotti then walked back to Wolbert who started to back away, pleading for his life. Visciotti raised the gun and shot Wolbert hitting him in the right side near his ribs. The shot knocked Wolbert to the ground. As he turned over Visciotti fired again, hitting Wolbert in the left shoulder. Wolbert got up and 'started to rush Visciotti.' When he was about two feet away Visciotti shot Wolbert directly between the eyes. Wolbert fell down again, but he did not lose consciousness. He heard Visciotti get in the car and drive away.

"About 10 or 15 minutes later Wolbert was able to flag down a passing motorist who stopped and helped him. Wolbert gave the man a business card from Global Wholesalers before being taken to the hospital. [3]

"Dykstra died of a single gunshot wound through the left side of his chest which pierced his heart. Wolbert lived, but lost his left eye as a result of the gunshot wound to his head.

"Defendant and Visciotti were arrested early the next morning at the Ha'Penny Inn. Defendant was interviewed by the police at 12:45 p.m. for approximately two hours. He was first advised of his Miranda rights and waived them before he was questioned about the robbery and shooting. Defendant denied all involvement in the crime until the police told him Visciotti had told them exactly what happened.

---

3 "Wolbert testified he gave the man the business card, because '[t]hat was the only thing I had on me that made any significant sense of where I was working and where the two people were that were involved.'"

4

"Defendant said he and Visciotti originally planned to 'burn' Dykstra and Wolbert by selling them sugar as cocaine. Later they decided to rob their victims using the promise of a party as a ruse. Defendant said he brought his gun along because he originally thought there were going to be three people instead of two. He handed the gun to Visciotti when they were both seated in the back seat of the car shortly before Visciotti requested the car be stopped so he could go to the bathroom. During this confession, defendant denied he told Visciotti to shoot anyone.

"At 4:45 p.m. the same day, defendant and Visciotti participated in a videotaped reenactment at the scene of the crime. During the reenactment, Visciotti said after defendant got the money he told defendant "let's leave." He stated, "I started like this and that's when he [defendant] said shoot 'em, don't let them go, they'll tell and I just started pulling the trigger." One of the police officers said, "Brian [defendant], he says that you told him to go and shoot them, is that true? Defendant replied, "Yes, it is." The interrogation continued as follows: "SIDEBOTHAM: Ok and why did you tell him to go ahead and shoot them? HEFNER: Cause I knew they'd narc us off. SIDEBOTHAM: What do you mean, 'narc' us off? HEFNER: Well, well, they'd go to the police and tell them what we'd done. SIDEBOTHAM: When you brought them out here, what was the purpose of bringing them out here in the first place. . . . HEFNER: To rob them and leave them stranded and to leave them dead."

"Defendant took the stand in his own defense, but told a slightly different story. While he admitted participation in the robbery, his testimony indicated he was just a follower and Visciotti was the criminally sophisticated mastermind who did the shooting to the complete surprise of defendant. He denied urging Visciotti to shoot the victims. He testified that just before the taped reenactment, while he and Visciotti were together in the back of the police vehicle, Visciotti told him to "tell the police that I told [Visciotti] . . . to shoot." Visciotti had been to prison twice before, and he convinced

5

defendant he would not get the gas chamber if defendant told the police he had been the one who urged Visciotti to shoot the victims."

*Trial, Sentencing, and Prior Appeals*

In 1983, a jury convicted defendant of one count of first degree murder (§ 187; count 1); one count of attempted murder (§§ 664, 187; count 2); and one count of robbery (§ 211; count 3). The jury also found true the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)) and that defendant was vicariously armed in each crime (§ 12022, subd. (a)).

The court sentenced defendant to life without possibility of parole plus 11 years 4 months in state prison as follows: (1) life without possibility of parole on count 1; (2) a consecutive term of nine years on count 2, plus one year for the arming allegation; and (3) a consecutive term of one year on count 3, plus four months for the arming allegation.

In 1985, another panel of this court affirmed the murder and robbery convictions but reversed the special circumstance finding (murder in the commission of a robbery) and the attempted murder conviction. (*People v. Hefner* (May 10, 1985, G000759) [nonpub. opn.] (*Hefner I*).) At defendant's request, he was retried on all charges despite the binding effect of the prior first degree murder and robbery convictions. (*Hefner II*, *supra*, G004568.) He "specifically waived any appeal rights should the jury render a not guilty verdict on the first degree murder charge or the robbery." (*Ibid.*)

The jury again found defendant guilty of all charges and the allegations true. The court sentenced defendant to life without possibility of parole plus 10 years in state prison as follows: (1) life without possibility of parole on count 1; (2) a consecutive term of nine years on count 2, plus one year for the arming allegation; and (3) a consecutive term of one year on count 3.

6

Defendant appealed his conviction for a second time. In 1988, another panel of this court struck the one-year term imposed for the armed allegation as to the attempted murder, stayed the one-year term for the robbery, and affirmed the judgment in all other respects. (*Hefner II*, *supra*, G004568.)

*Defendant's Resentencing Petition*

In January 2021, defendant filed a petition seeking resentencing pursuant to section 1172.6. In his petition, defendant averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st . . . degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1, 2019."

After a hearing where defendant was represented by counsel, the court denied the petition. The court found defendant was not eligible for resentencing "because of the special circumstance finding . . . ." In support of its conclusion, the court issued a statement of decision and explained: "In finding the special circumstances allegations true, the jury necessarily found that the petitioner acted with the intent to kill. Because this finding would allow Petitioner to be convicted of first or second-degree murder notwithstanding the changes to sections 188 and 189 made effective January 1, 2019, Petitioner is not eligible for relief from his murder conviction . . . ." The court further emphasized "the only definition of malice given to the jury under the Murder definition was *express malice* only." Defendant timely filed a notice of appeal.

DISCUSSION

Defendant contends the court improperly denied his petition for resentencing at the prima facie stage. He claims the jury's true finding on the special circumstance allegations does not preclude him from obtaining resentencing relief as a matter of law. We agree.

*Applicable Law*

"Generally, a person may be liable for a crime as a direct perpetrator or as an aider and abettor. [Citation.] An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). [Citation.] Liability for intentional, target offenses is known as 'direct' aider and abettor liability; liability for unintentional, nontarget offenses is known as the ""'natural and probable consequences' doctrine.""" (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123, review granted May 18, 2022, S274102 (*Pacheco*).)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending sections 188 and 189 and adding section 1172.6, such that persons convicted of felony murder or murder under a natural and probable consequences theory could seek resentencing or to have the conviction vacated. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).) Effective January 1, 2022, the Legislature amended section 1172.6 to expand resentencing eligibility to persons convicted of attempted murder and manslaughter. (Stats. 2021, ch. 551, § 2.)

8

"Although an accomplice can no longer be convicted of murder under the natural and probable consequences theory, an accomplice can still be convicted of murder as a direct aider and abettor." (*Pacheco*, *supra*, 76 Cal.App.5th at p. 124, review granted.) "Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts and had the requisite intent' to aid and abet the target crime of murder. [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.'" (*Ibid.*)

Senate Bill 1437 also created a procedure, codified in section 1172.6, by which defendants could seek resentencing if their conduct did not constitute murder as redefined by Senate Bill 1437. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) The defendant first must file a petition showing: (1) he was prosecuted for felony murder or murder under the natural and probable consequences doctrine; (2) he was ultimately convicted of first or second degree murder; and (3) he could not be convicted for murder today because of how the Legislature has redefined the offense. (§ 1172.6, subd. (a)(1)-(3).) If the petition is facially sufficient and the petitioner requests counsel, the trial court must appoint counsel. (*Id.*, subd. (b)(3).) The parties then brief the question of whether petitioner is entitled to relief. (*Id.*, subd. (c).)

In determining whether the petitioner has made a prima facie case for relief, the trial court may rely on the record of conviction. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) The record of conviction may include the court's own documents, including the underlying facts as presented in an appellate opinion, the trial evidence, the jury instructions, and closing arguments of counsel. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13.) As our Supreme Court explained, "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

"While the trial court may look at the record of conviction . . . to determine whether petitioner has made a prima facie case . . ., the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court cannot engage in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.) The court also "'"takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Id.* at p. 971; § 1172.6, subd. (c)) But if the record of conviction refutes allegations in the petition, the trial court can make a credibility determination adverse to the petitioner. (*Lewis*, at p. 971.)

Because the trial court's denial of defendant's petition turned on an application of section 1172.6 to the undisputed facts, our review is de novo. (*Pacheco*, *supra*,76 Cal.App.5th at p. 123, review granted.)

*The Court Erred*

Defendant argues the court erred by relying on the jury's special circumstance finding to deny his petition at the prima facie stage. He notes the jury was offered felony murder and direct aiding and abetting theories to support the murder and attempted murder charges. He therefore claims his petition could be denied only if the record of conviction unequivocally shows he directly aided and abetted Visciotti in the murder or was a major participant in the robbery acting with reckless indifference. We agree the jury's special circumstance finding did not render defendant ineligible for relief as a matter of law.

Here, the jury found true the special circumstance that the murder was committed during the commission of a robbery. (§ 190.2, subd. (a)(17).) On the special circumstance, the court provided the then-prevailing version of CALJIC No. 8.80, which stated in relevant part: "If you find the defendant[s] in this case guilty of murder of the

10

first degree, you must then determine if the murder was committed . . . during the commission of a robbery.  [¶] . . . [¶]  *If defendant . . . was . . .* [*aider and abettor*] *but not the actual killer*, it must be proved beyond a reasonable doubt that *he intended to aid in the killing of a human being* before you are permitted to find the alleged special circumstance of that first degree murder to be true as to defendant . . . ."  (Italics added.)

The court also provided the then-prevailing version of CALJIC No. 8.81.17, which stated in relevant part:  "To find that the special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved:"  "That the murder was committed while the defendant was [engaged in] the [commission] of a robbery"; "That the defendant [*intended to aid another in the killing of a human being*]" (italics added); "That the murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection.  In other words, the special circumstance referred to in these instructions is not established if the robbery was merely incidental to the commission of the murder."

Given the intent language in the instructions — "intended to aid another in the killing of a human being" — the trial court appears to have concluded the jury necessarily found defendant directly aided and abetted the murder.  Not true.  To be guilty of murder as an aider and abettor under the first degree felony-murder rule, the jury must find the defendant "was not the actual killer, but, *with the intent to kill*, aided, abetted, counseled, commanded, induced, solicited, requested, or *assisted the actual killer in the commission of murder in the first degree*."  (§ 189, subd. (e)(2), italics added.)  Here, the special circumstance instruction establishes defendant had the requisite intent — to aid in the killing (the mens rea).  But every crime, except for strict liability offenses, has two components:  "'(1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea.  [Citations.]  This principle applies to aiding and abetting liability as well as direct liability.  An aider and abettor

11

must do something *and* have a certain mental state.'" (*Pacheco*, *supra*, 76 Cal.App.5th at p. 127, review granted.)

In the instant case, it is possible the jury found defendant only aided and abetted the predicate felony (robbery), rather than directly aiding and abetting the murder (the actus reus). Indeed, the court instructed the jury with the former (now defunct) felony murder rule: "If a human being is killed by any one . . . in the perpetration of . . . the crime of robbery[,] all persons who either directly and actively commit the act constituting such crime or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree . . . ." In other words, defendant could be guilty of murder if he aided and abetted the robbery.

*People v. Ervin* (2021) 72 Cal.App.5th 90 is instructive. In *Ervin*, another panel of this court found the jury's true finding on felony-murder special circumstance allegations did not preclude the defendant from obtaining resentencing relief as a matter of law. (*Id.* at p. 104.) The jury found the defendant was guilty of burglary, robbery, and first-degree murder. (*Id.* at p. 103.) The jury also found true two felony-murder special circumstance allegations. (*Id.* at p. 94.) The Court of Appeal noted the jury was instructed on two theories of murder — premeditated and deliberate murder and the former (now defunct) first degree felony-murder rule. (*Id.* at p. 102.) On the special circumstance, the trial court provided CALJIC No. 8.80, which required the jury to find beyond a reasonable doubt that the defendant was either the actual killer or an aider and abettor who "'intended *either to kill a human being or to aid another in the killing of a human being* . . . .'" (*Ervin*, at p. 107.) Despite the jury's true finding on the special circumstance, the court concluded the jury may have found the defendant guilty of murder as an aider and abettor under the former first degree felony-murder rule. (*Id.* at p. 108.) The court explained the jury could have found "the felony-murder special-

12

circumstance allegation true if they generally found [defendant] aided and abetted another in the commission of the robbery or burglary . . . rather than a more specific finding that [defendant] aided and abetted 'the actual killer . . . with the intent to kill.'" (*Id.* at pp. 108-109.)

Likewise, in *Pacheco*, *supra*, 76 Cal.App.5th 118, review granted, another panel of this court held the jury's true finding on a gang special circumstance did not establish the defendant was found guilty of murder as a direct aider and abettor. (*Pacheco*, at p. 128.) The special circumstance instruction required the jury to find the defendant "had the intent to kill at the time of the killing." (*Id.* at pp. 127-128.) While the jury's true finding established the defendant intended to kill (the mens rea), the court found the jury instruction did not establish as a matter of law that the defendant directly aided and abetted the killing (the actus reus). (*Id.* at p. 128.) The court accordingly reversed and directed the trial court to issue an order to show cause and to conduct and evidentiary hearing. (*Id.* at p. 129.)

As in *Ervin* and *Pacheco*, the jury's true finding on the special circumstance allegations does "not conclusively establish [defendant] could be found guilty of murder under current law (that he had the intent to kill, *and* he directly aided and abetted the target crimes of murder)." (*Pacheco*, *supra*, 76 Cal.App.5th at p. 122, review granted.)

We accordingly reverse the court's summary denial of defendant's petition. On remand, the court is directed to issue an order to show cause and to conduct an evidentiary hearing as to the murder charge. Because the Legislature expanded resentencing eligibility to persons convicted of attempted murder, the court is further directed to consider whether defendant can establish a prima facie basis for relief as to his attempted murder conviction. (Stats. 2021, ch. 551, § 2.)

13

DISPOSITION

The postjudgment order denying defendant's section 1172.6 petition is reversed. On remand, the court is directed to issue an order to show cause and to conduct a hearing as to the murder conviction. As to the attempted murder conviction, the court is directed to consider defendant's section 1172.6 petition at the prima facie stage.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.


14